**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT COVINGTON**

**CIVIL ACTION NO. 12-182-DLB**

**WILD AFFILIATED HOLDINGS, INC. and**
**WILD FLAVORS, INC.** **PLAINTIFFS**

**vs.** **MEMORANDUM OPINION AND ORDER**

**HUKILL HAZLETT HARRINGTON AGENCY, INC., et al.** **DEFENDANTS**

***** *** *** *****

## I. INTRODUCTION

This matter is before the Court on two motions to dismiss. Defendant G. Wayne Oetjen has moved the Court to dismiss all claims against him pursuant to Federal Rule of Civil Procedure 12(b)(6) because he was acting as an agent of a disclosed principal, Defendant Hukill Hazlett Harrington Agency, Inc., at all times relevant to the Complaint and is therefore absolved of liability for any of his conduct. (Doc. # 22). Defendants Hukill Hazlett Harrington Agency, Inc. and G. Wayne Oetjen have also moved to dismiss the Complaint (Doc. # 23) because it is not ripe for review. Alternatively, if the Court finds this matter is ripe for review, Defendants ask the Court to compel Plaintiffs to name all necessary parties to this action as Defendants. If joinder is not possible, Defendants ask the Court to dismiss this case.

The Court held oral argument on Defendants' motions on March 6, 2014. The parties were present as noted in the Court's minutes. (Doc. # 45). At the conclusion of the

oral argument, the Court submitted the motions pending written decision.

Having considered both the parties' oral arguments and their briefing, the Court will grant the Defendants' motion to dismiss this case because it is not ripe for review. In light of this ruling, the Court need not consider Defendants' additional motions. They will therefore be denied as moot.

## II. STANDARD OF REVIEW

In briefing Defendants' motion to dismiss, the parties brought numerous facts to the Court's attention that are not mentioned in the Complaint. They have done so in both their oral arguments to the Court[1] and in various documents they have attached to their briefing on the pending motions. (*See, e.g.* Docs. 23-2, 25-2, 25-3, 25-4, 26-2). But is it proper for the Court to consider these additional facts and documents?

A lack of ripeness claim is properly construed as a motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure12(b)(1). *Hearns Concrete Const. Co. v. City of Ypsilanti*, 241 F. Supp. 2d 803, 810 (E.D. Mich. 2003) (citing *Bigelow v. Michigan Dept. of Natural Res.*, 970 F.2d 154, 157 (6th Cir. 1992)). The Court applies different standards depending on whether the defendant makes a facial or factual attack to the complaint and the facts giving rise to subject matter jurisdiction. *Id.* When the defendant mounts a facial attack—that is, the defendant does not dispute the facts underlying the ripeness of the complaint—"the court must apply the same standard applicable to Rule 12(b)(6)." *Id.*

---

[1] As will be explained herein, the Court learned additional facts at oral argument that only support the conclusion that this controversy is not ripe for review. While the Court will not rely on those facts in reaching its ultimate conclusion, the Court will address those facts at the end of the analysis for the parties' benefit.

Defendants have lodged a facial attack here. That is, they have argued that the facts in the Complaint do not support a claim that is ripe for the Court's review. Thus, the Court will apply the Rule 12(b)(6) standard to Defendants' motion. Under that standard, the Court must look only to the Complaint and determine whether it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Shuler v. Garrett*, – F. 3d –, 2014 WL 563272, at *1 (6th Cir. Feb. 14, 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

## III. FACTUAL BACKGROUND

When the events giving rise to this dispute occurred, Plaintiffs Wild Affiliated Holdings, Inc. and Wild Flavors, Inc. had an eighteen-year working relationship with Defendants Hukill Hazlett Harrington Agency, Inc. ("HHH") and G. Wayne Oetjen at the time the events surrounding this litigation took place. Plaintiffs contracted with Defendants HHH–an insurance agency–and Mr. G. Wayne Oetjen–the agency's president–to represent them in all of their insurance needs beginning in 1994. However, the scope of the parties' business relationship changed in 2012, when Plaintiffs hired Defendants solely for the purpose of counseling them about their insurance needs "and procuring certain types of health and benefits insurance coverage . . . ." (Doc. # 1 at ¶ 13).

In Defendants' reduced role, Plaintiffs asked them to procure umbrella and excess insurance coverage on their behalf for the period of April 12, 2011 to April 12, 2012. Plaintiffs expected this insurance to provide coverage over and above that provided by their primary commercial general liability insurance. Defendants, with the help of an intermediary broker, obtained multiple proposals and quotations on Plaintiffs' behalf. However, they never presented the proposals and quotations to Plaintiffs as they were

contractually obligated to do. Defendants ultimately procured an umbrella policy from Allied World National Insurance Company ("Allied") on Plaintiffs' behalf, which Defendants described as "the same, or better, coverage as the expiring 2010/2011 umbrella and excess liability coverage." (*Id.* at ¶ 19). The umbrella policy contained an important exclusion: it did not cover any loss caused by mold in food or other consumables.

In June 2011, Plaintiffs received a claim from one of their customers that they had provided the customer with a defective product which, in turn, damaged property owned by the customer. Specifically, Plaintiffs allegedly provided their customer with a product containing heat-resistant mold.

Defendant HHH reported the claim to Plaintiffs' insurance carriers for both the 2010-2011 and 2011-2012 policy years. On September 9, 2011, Allied issued a reservation of rights letter to Plaintiffs stating that their 2011-2012 umbrella insurance policy did not cover the claim. "Among other reasons, a mold exclusion contained in the Allied policy allegedly precluded coverage." (*Id.* at ¶ 26). On April 27, 2012, Allied issued a coverage position reiterating the points raised in its reservation of rights letter; namely, that the umbrella policy did not cover the claimed loss because of, *inter alia*, a mold exclusion.

Puzzled by Allied's position, Plaintiffs reviewed the 2011-2012 umbrella and excess policies and found that they "were not in keeping with the representations made to [them] by Defendants." (*Id.* at ¶ 28). In fact, the 2011-2012 policies purported to provide less coverage than the expiring 2010-2011 policies. What's more, the 2011-2012 policies "were inconsistent, non-cohesive and not contiguous, and . . . gaps existed in the umbrella and excess liability coverage." (*Id.*). "For example, . . . certain of the excess policies contain a mold exclusion, while others do not; and the mold exclusions contained in certain of the

excess polices are inconsistent with one another." (*Id.* at ¶ 29).

Plaintiffs allege that Defendants' actions and inactions have caused them to suffer in numerous ways. Foremost, Allied has denied their claim under the 2011-2012 umbrella policy. Additionally, the 2011-2012 umbrella and excess policies are "drastically different, and much less, than had been represented to [them] by Defendants." (*Id.* at ¶ 31). Finally, Plaintiffs have been damaged to the extent that the policies are "not consistent, cohesive, and contiguous, and contain gaps in the coverage provided by those policies." (*Id.* at ¶ 32).

As a result of the foregoing, Plaintiffs filed suit against Defendants on August 31, 2012, alleging claims of breach of contract and negligence. They allege that Defendants had a contractual obligation to procure umbrella and excess insurance coverage for them for the 2011/2012 policy period, which they breached in eleven (11) ways, none of which are particularly relevant to the issues before the Court. Further, Plaintiffs allege that Defendants owed them a duty under common law to act with skill and ordinary care in procuring the insurance coverage, which they failed to do. As a result, they allege that Defendants are liable "for all sums which would otherwise have been covered by the 2011/2012 umbrella and excess liability policies but for Defendants' breach of contract [and negligence] . . . ." (Doc. # 1 at ¶¶ 39, 45).

## IV. ANALYSIS

Defendants move the Court to dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(1) because Plaintiffs' claims are not ripe for review. The ripeness doctrine is designed to "separate those matters that are premature because the injury is speculative and may never occur from those acts that are appropriate for the court's review." *Nat'l Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272, 280 (6th Cir. 1997). "Ripeness is, thus, a

question of timing." *Id.* at 284. An issue is ripe for the Court's review if the injury has been done or is certainly impending. *Id.* Conversely, an issue is not yet ripe for review if it "is anchored in future events that may not occur as anticipated, or at all." *Id.* (citing *Pacific Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 200-01 (1983)).

Defendants assert that Plaintiffs' claims are grounded in future events and are, thus, not ripe for review. Defendants acknowledge that Allied denied Plaintiffs' claim submitted under the umbrella policy they helped purchase. However, Defendants suggest that this denial alone did not injure Plaintiffs. Instead, Defendants argue that Plaintiffs have suffered no harm at all until they are required to pay the underlying claim made by the customer that allegedly received a defective product. According to Defendants, the Complaint does not allege that Plaintiffs have been required to pay the underlying claim to this point. More importantly, the Complaint does not allege the amount that Plaintiffs paid on the underlying claim. If that amount is something covered solely by Plaintiffs' general liability insurance, Plaintiffs' have suffered no harm by Allied denying their claim under the umbrella policy. Until each of these issues are decided, Defendants assert that this claim is not ripe for review.

Plaintiffs respond that Defendants miss the point of this litigation in two significant ways. First, they argue that this case is about recouping premiums paid to Defendants for performing inadequate work rather than recovering money for any uninsured loss. Second, Plaintiffs assert that none of their claims depend on the occurrence of some future event. Rather, each of Plaintiffs' claims depend exclusively on past events that have already caused them harm. Plaintiffs assert that Defendants failed to meet their contractual

obligation to procure umbrella and excess insurance policies that covered the risks associated with Plaintiffs' business. Additionally, Defendants failed to procure cohesive, consistent insurance policies.

Plaintiffs' briefing and oral argument on this point is nothing more than an attempt to change the focus of their own Complaint. Nowhere in the Complaint do Plaintiffs ask to be reimbursed for premiums paid to Defendants. Rather, as Defendants correctly point out, Plaintiffs prayer for relief seeks only one thing: "Defendants are liable to Plaintiffs *for all sums which would have otherwise* been covered by the 2011/2012 umbrella and excess liabilities policies but for Defendants breach of contract [/negligent acts] and those which naturally flow from their breach of contract[/negligent acts]." (Doc. # 1 at ¶ 39, ¶ 42) (emphasis added). In essence, the prayer for relief seeks compensation for an uninsured loss.

Not only does Plaintiffs' briefing part ways with the Complaint, Plaintiffs' position also fails to make practical sense. Plaintiffs essentially argue that they have been harmed because they purchased insurance policies that do not cover all the risks associated with their business. There can be no harm, though, until one of those risks turns into a reality. That is, there can be no harm until Plaintiffs have to cover a loss out of their pocket because their insurance failed to cover it.

Here, the Complaint does not allege that Plaintiffs have had to pay for any loss. At best, the Complaint alleges that one of Plaintiffs' customers filed a claim with them as a result of being supplied a defective product. There is no suggestion that Plaintiffs have paid that claim, nor is there any mention of the amount Plaintiffs owed. Without these allegations, it does not appear that Plaintiffs have had to pay any "sum[] which would have

otherwise been covered by the 2011/2012 umbrella and excess policies but for Defendants'" conduct. (*See* Doc. # 1 at ¶ 39, ¶ 42). Thus, even if the policies procured by Defendants are somehow defective, the Complaint does not plead any facts to allege that Plaintiffs have suffered any damage requested in their prayer for relief.

The Court will rest its holding on the analysis above. However, Plaintiffs proffered additional facts at oral argument that only confirm this controversy is not ripe for review. According to Plaintiffs, they have resolved the underlying claim made by the customer. That claim was covered in full by insurance for policy years 2010/2011, meaning they have not suffered an insured loss as a result of that claim. Moreover, Plaintiffs acknowledge that they have not received a single claim from their customers that should have been covered by the policies at issue. These facts highlight the defect in Plaintiffs' Complaint: they have not sustained any loss that "would have otherwise been covered by the 2011/2012 umbrella and excess policies." (*Id.*).

## V. CONCLUSION

In an effort to establish that this controversy is ripe for review, Plaintiffs have crafted a last-second ploy to re-characterize the relief sought in their Complaint. This attempt is ill-fated; Plaintiffs are bound by the facts plead in their Complaint, and the relief sought therein. They have prayed to be reimbursed for "for all sums which would have otherwise been covered by the 2011/2012 umbrella and excess liabilities policies but for Defendants breach of contract [/negligent acts] and those which naturally flow from their breach of contract[/negligent acts]." (Doc. # 1 at ¶ 39, ¶ 42). Because the Complaint is devoid of any facts suggesting that there were sums which should have been covered by the 2011/2012 umbrella and excess liabilities policies, this controversy, as plead, is not ripe for review.

Accordingly,

**IT IS ORDERED** as follows:

(1) Defendants' Motion to Dismiss (Doc. # 23) is hereby **granted in part and denied as moot in part**. The motion is granted to the extent that this matter is not ripe for review, and denied as moot to the extent that Plaintiffs allegedly failed to join all necessary parties as required by Federal Rule of Civil Procedure 19.

(2) Defendant G. Wayne Oetjen's Motion to Dismiss (Doc. # 22) is hereby **denied as moot**; and

(3) This matter is hereby **dismissed without prejudice**, and shall be **stricken** from the Court's active docket.

This 13th day of March, 2014.

**Signed By:**
***David L. Bunning***
**United States District Judge**

B:\DATA\Opinions\Covington\2012\12-182 MOO granting motion to dismiss on ripeness grounds.wpd